UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JACKUELINE SHOCKLEY,            )
                                )
              Plaintiff,        )
                                )
          v.                    )        No.  4:10CV638 FRB
                                )
CITY OF ST. LOUIS,              )
                                )
              Defendant.        )


**MEMORANDUM AND ORDER**

Presently pending before the Court is defendant City of
St. Louis' Motion for Summary Judgment (Doc. #30).  All matters are
pending before the undersigned United States Magistrate Judge, with
consent of the parties, pursuant to 28 U.S.C. § 636(c).

Plaintiff Jackueline Shockley brings this action pro se,
alleging that the City of St. Louis discriminated against her in
her employment at the Division of Corrections on account of her
gender and disability, and in retaliation for engaging in protected
activity.  Plaintiff brings her claims pursuant to Title VII of the
Civil Rights Act of 1991, 42 U.S.C. §§ 2000e, et seq.; and the
Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101, et seq.

Defendant now moves for summary judgment arguing that
there are no genuine issues of material fact and that it is
entitled to judgment as a matter of law.  Plaintiff has responded
to the motion to which defendant has replied.  Plaintiff has also

filed a sur-reply to defendant's reply brief.[1]

Pursuant to Fed. R. Civ. P. 56(c), a court may grant summary judgment if the information before the court shows that there are no material issues of fact in dispute and that the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).  The burden of proof is on the moving party to set forth the basis of its motion, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), and the court must view all facts and inferences in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).  Once the moving party shows there are no material issues of fact in dispute, the burden shifts to the adverse party to set forth facts showing there is a genuine issue for trial.  Id.  The non-moving party may not rest upon her pleadings, but must come forward with affidavits or other admissible evidence to rebut the motion.  Celotex, 477 U.S. at 324.

Summary judgment is a harsh remedy and should not be granted unless the movant "has established [its] right to judgment with such clarity as to leave no room for controversy."  New England Mutual Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir.

_____

[1]Defendant has since moved to strike plaintiff's sur-reply. (See Doc. #40.)  Because a review of defendant's Reply Memorandum shows defendant to raise arguments which were not raised in its Memorandum in Support of its Motion for Summary Judgment, and specifically, that nondiscriminatory reasons exist for its alleged conduct and such reasons are not pretext for discrimination, the undersigned determines to permit plaintiff to proceed on her sur-reply.  Defendant's Motion to Strike will therefore be denied.

- 2 -

1977).  The Eighth Circuit has noted, however, that "summary judgment can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact."  City of Mt. Pleasant, Iowa v. Associated Elec. Coop., Inc., 838 F.2d 268, 273 (8th Cir. 1988).

## I.  Background

At all times relevant to this cause, plaintiff was employed as a Corrections Officer I (CO I) with the City of St. Louis, Division of Corrections.  Plaintiff began employment with the Division of Corrections in August 2002.  Plaintiff was assigned to the Control Center at the Medium Security Institution (MSI) on September 8, 2008, and remains so assigned to date.  The position of Control Center operator is a CO I level position.

In 2005, Captain Robert Bond accused plaintiff of having an affair and also engaged in belligerent conduct directed toward plaintiff.  In 2005 plaintiff filed a complaint against the City of St. Louis, Division of Corrections, alleging harassment on the part of Captain Bond.  Plaintiff prevailed on the claim and, in March 2006, the Division of Personnel recommended that Captain Bond undergo sexual harassment training.  Captain Bond has not supervised plaintiff since 2006 and plaintiff has had no problem with Captain Bond since that time.

In the instant Complaint, plaintiff complains of certain

conduct directed toward her within the Division of Corrections and contends that such conduct was and is in retaliation for her claim of discrimination brought against Captain Bond. Plaintiff also claims that certain instances of such conduct constitute discrimination on account of her gender and disability. In its Motion for Summary Judgment, defendant contends that plaintiff failed to exhaust her administrative remedies with respect to the claims raised in the instant Complaint. Defendant also contends that plaintiff cannot establish a *prima facie* case of discrimination for any of her claims. The Court will address each of defendant's contentions in turn.

## II.  Exhaustion of Administrative Remedies

Before filing a lawsuit in federal court, a Title VII plaintiff must follow the statutorily prescribed administrative procedure so that the Equal Employment Opportunity Commission (EEOC) is provided the first opportunity to investigate alleged discriminatory practices and to perform its role of obtaining voluntary compliance and promote conciliatory efforts. Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 222 (8th Cir. 1994) (citing Patterson v. McLean Credit Union, 491 U.S. 164, 180-81 (1989)). To exhaust such administrative remedies, the plaintiff must 1) timely file a charge of discrimination with the EEOC setting forth the facts and nature of the charge, and 2) receive notice of the right to sue. Id. Claims of discrimination raised

in a judicial complaint which were not previously raised in an EEOC charge, or are not "like or reasonably related to" such EEOC claims, are deemed not to be exhausted and are thus barred from judicial review. Id. at 222-23. To allow a Complaint to encompass allegations outside the scope of the EEOC charge would circumscribe the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge. Id. at 223; see also Duncan v. Delta Consol. Indus., Inc., 371 F.3d 1020, 1025 (8th Cir. 2004), abrogated on other grounds by Torgerson v. City of Rochester, 643 F.3d 1031 (8th Cir. 2011)).

A.    Plaintiff's Charge of Discrimination

On June 23, 2009, plaintiff filed a charge of discrimination with the EEOC in which she alleged that the City of St. Louis, Division of Corrections, discriminated against her in her employment on account of her disability and in retaliation for engaging in protected activity. Plaintiff claimed in the charge that the discrimination occurred between April 8, 2009, and April 16, 2009. The specific instances giving rise to plaintiff's claims as set out in plaintiff's charge are as follows:

> On or about August 12, 2002, I was hired by the above referenced employer as a correctional officer. In about 2006 I complained about sex discrimination. In about December 2007, I filed a complaint with the Commission of Human Rights based on sex discrimination. On or about April 1, 2009, I was denied a request for unscheduled vacation. Jeffery Love stated that unscheduled vacations

were not being granted at that time because of
the shift shortage. On or about April 8,
2009, I found out that I was going to be moved
to the maximum security building because of my
FMLA and disability. On or about April 10,
2009, I complained to Commissioner, Gene
Stubblefield about this employment decision.
On or about April 11, 2009, I complained to
Mr. James Crans, Deputy Superintendent about
disability discrimination. On or about April
11, 2009, Mr. Stubblefield's secretary, Pat
Cox, informed me that this list was not being
considered; however, other coworkers on this
list have been moved. On or about April 20,
2009, Reginald Moore, Unit Manager, gave me an
employee action report (E.A.R.) for violation
of Division of Corrections Policy and
Procedure #1.3.4. Code of Ethics/Conduct, but
this is not the case. On or about May 6,
2009, Officer Henderson, directed by Captain
Marilyn Ervin, informed me that I could not
take a colored bag into the control center
anymore; yet, other coworkers are allowed to
continue to take colored bags and dark colored
containers into the secure area.

I believe that I have been discriminated
against in retaliation for complaining about
sex discrimination, in violation of Title VII
of the Civil Rights Act; and because of my
disability and because of complaining about
disability discrimination, in violation of the
Americans with Disabilities Act.

(Pltf.'s Compl., Attch., Doc. #1-2 at p.4.)

On February 9, 2010, the EEOC issued a right to sue letter on

plaintiff's 2009 charge of discrimination.

B.    Plaintiff's Complaint

        Plaintiff filed the instant Complaint with this Court on

April 14, 2010. In her Complaint, plaintiff claims that defendant

City of St. Louis discriminated against her in her employment with

the Division of Corrections by failing to promote her, by subjecting her to terms and conditions of employment which were different from those of similar employees, by subjecting her to harassment, and in retaliation for engaging in protected conduct. Plaintiff claims that such conduct, in addition to being retaliatory in nature, was on account of her gender and disability. The specific instances giving rise to plaintiff's claims are set out in plaintiff's Complaint as follows:

> I filed a claim aganist [sic], at that time,
> Lt. Robert Bond.   After this claim, I was
> accused of dating an inmate, moved to another
> facility, then moved back after I went to the
> Comm. of Human rights.  Not promoted 4 times.
> Constantly humiliated in front of my co-
> workers. Rude correspond[ence] sent to me.  A
> gun pointed at me by a male Lt.  Vulgar and
> abusive language being made towards me.
> Isolating me from my co-workers.  Issuing
> false doctor's orders about me, and my ability
> to work.  Comments made in private about co-
> workers being made public.  No disciplinary
> action taken on the gun issue.  Documentation
> submitted by myself.  Issuing statement "No
> contact with inmates" in bold letters.  As if
> I had had an affair, no such thing.

(Pltf.'s Compl., Doc. #1, pp.5-6.)

Although plaintiff claims in her Complaint that such alleged discrimination occurred on or about June 2004 (id. at p.3), she also claims that such discrimination continues to occur (id. at p.7).

C.   <u>Discussion</u>

   1.   *Gender Discrimination*

        In her charge of discrimination filed with the EEOC, and
of which notice was given to defendant City of St. Louis, plaintiff
asserted discrimination based only on retaliation and disability.
Although provided an opportunity to indicate on the charge that the
alleged discrimination was based on sex, plaintiff did not check
the designated box so indicating.  Nor did plaintiff assert facts
in the charge which could reasonably give rise to a claim of gender
discrimination.  Although plaintiff asserted in the charge that the
protected activity for which she was allegedly retaliated against
was based on a previous complaint of sex discrimination, plaintiff
made no allegations indicative of gender discrimination upon which
she sought relief in the current charge of discrimination.

        As such, the undisputed evidence before the Court shows
that plaintiff's current claim of gender discrimination was never
presented to or investigated by any administrative agency.
Plaintiff presents no argument or evidence to this Court
demonstrating that her current claim of gender discrimination is
like or reasonably related to any claim raised in her 2009 EEOC
charge of discrimination or considered by the agency such that the
claim should be considered exhausted.  Nor has plaintiff presented
the Court with any argument or evidence demonstrating that either
waiver, estoppel or equitable tolling applies so as to excuse her

failure to administratively exhaust the claim. Accordingly, because plaintiff did not exhaust her current claim of gender discrimination through the administrative process, defendant is entitled to summary judgment thereon. <u>Tyler v. University of Ark. Bd. of Trustees</u>, 628 F.3d 980, 989 (8th Cir. 2011); <u>Duncan</u>, 371 F.3d at 1026; <u>Williams</u>, 21 F.3d at 223.

2.    *Failure to Promote*

A lawsuit filed subsequent to a charge of discrimination need not mirror the administrative charge, and the scope of the lawsuit is not necessarily limited to the specific allegations in the charge. <u>Duncan</u>, 371 F.3d at 1025; <u>Nichols v. Americal Nat'l Ins. Co.</u>, 154 F.3d 875, 886 (8th Cir. 1998). However, an aggrieved employee may not make a conclusory statement of discrimination in a charge of discrimination "and then file suit on whatever facts or legal theories she may later decide upon." <u>Faibisch v. University of Minn.</u>, 304 F.3d 797, 803 (8th Cir. 2002). Instead, the charge must "be sufficient to give the employer notice of the subject matter of the charge and identify generally the basis for a claim." <u>Malone v. Ameren UE</u>, 646 F.3d 512, 516 (8th Cir. 2011).

In her charge of discrimination, plaintiff identifies four instances of alleged discrimination which were based on her disability and/or were done in retaliation for engaging in protected conduct:

*    April 2009 – denied request for unscheduled

vacation;

* April 2009 - proposed transfer to maximum security building;

* April 2009 - unfounded receipt of employee action report; and

* May 2009 - differential treatment with respect to carrying colored bags/containers in secure area.

Nowhere in her charge does plaintiff claim that defendant failed to promote her. Nor does the charge identify any circumstances from which one could liberally construe a claim of failure-to-promote. "[T]here is a difference between liberally reading a claim which lacks specificity, and inventing, *ex nihilo,* a claim which simply was not made." <u>Shannon v. Ford Motor Co.</u>, 72 F.3d 678, 685 (8th Cir. 1996) (internal quotation marks and citation omitted). Here, a liberal and reasonable reading of plaintiff's charge of discrimination shows that plaintiff simply did not raise a claim of failure-to-promote nor allege facts suggesting an implicit failure-to-promote claim. It is not reasonable to expect the EEOC to look for and investigate discrete acts of discrimination, such as a failure to promote, when they are nowhere mentioned in the administrative charge. <u>Parisi v. Boeing Co.</u>, 400 F.3d 583, 586 (8th Cir. 2005); <u>National R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 114-15 (2002) (failure to promote is a discrete act).

Because plaintiff failed to exhaust her administrative remedies with respect to her instant claim that defendant

unlawfully failed to promote her, defendant is entitled to summary judgment thereon. Shannon, 72 F.3d at 685-86; Malone, 646 F.3d at 516-17.

3. *Claims not Raised in Complaint*

Throughout the course of discovery in this cause, plaintiff identified various circumstances and bases upon which she claims additional discrimination based on her gender and race, and in retaliation for engaging in protected conduct. Inasmuch as plaintiff raised no claims of gender or race discrimination in her charge of discrimination nor identified any circumstances suggesting such discrimination, plaintiff failed to exhaust any claims based on race or gender discrimination and defendant is entitled to summary judgment thereon.

To the extent plaintiff refers to additional retaliatory conduct which occurred subsequent to her filing of the EEOC charge of discrimination and/or the filing of this lawsuit, the undersigned determines such conduct to be sufficiently like and/or related to the alleged retaliatory conduct asserted in the charge such that the claim may be considered exhausted. In addition, the undersigned determines to accord plaintiff leeway in pursuing such claim inasmuch as, in addition to identifying specific retaliatory conduct in her EEOC charge, she asserts in her Complaint that the alleged conduct continues to occur. Cf. Betz v. Chertoff, 578 F.3d 929, 937-38 (8th Cir. 2009) ("continuing violation doctrine" in

hostile work environment claims where claim may be supported by a series of incidents occurring over period of time) (citing <u>Morgan</u>, 536 U.S. at 122); <u>but see</u> <u>Wedow v. City of Kansas City, Mo.</u>, 442 F.3d 661, 673-74 (8th Cir. 2006) (plaintiff permitted to proceed on additional allegations of retaliation made in Complaint where alleged conduct was identical to that alleged in charge, *and* charge stated that such acts were continuing and ongoing).

### III.  Exhausted Claims of Discrimination

Remaining before the Court are plaintiff's claims of discrimination based on disability and retaliation.  For each of these claims, defendant contends that plaintiff has failed to make a *prima facie* case establishing such discrimination.  For the following reasons, defendant's argument is well taken.

A.    <u>Disability Discrimination</u>

Liberally construing plaintiff's charge of discrimination and the instant Complaint, plaintiff claims that defendant discriminated against her on account of her disability by 1) assigning plaintiff to work in the Control Center in September 2008, and 2) by proposing that plaintiff be transferred to another facility in April 2009.  On plaintiff's claim of disability discrimination, defendant contends that plaintiff cannot satisfy any element to establish a *prima facie* case of discrimination under the ADA.

Because there is no direct evidence of discrimination,

the Court must proceed under the familiar burden shifting analysis as established in <u>McDonnell Douglas v. Green</u>, 411 U.S. 792, 802-04 (1973), which requires plaintiff first to establish a *prima facie* case of discrimination. <u>See</u> <u>Lors v. Dean</u>, 595 F.3d 831, 834 (8th Cir. 2010). To establish a *prima facie* case of discrimination under the ADA, plaintiff must show: 1) an ADA-qualifying disability; 2) qualifications to perform the essential functions of her position with or without reasonable accommodation; and 3) an adverse employment action due to her disability. <u>Norman v. Union Pac. R.R. Co.</u>, 606 F.3d 455, 459 (8th Cir. 2010). Under this framework, the Court will address each instance of disability discrimination as alleged by plaintiff.

     1. *Plaintiff's Position in the Control Center*

As an initial matter, the undersigned notes that in 2008, Congress passed the Americans with Disabilities Amendments Act of 2008 (ADAAA), which became effective on January 1, 2009. Pub. L. No. 110-325, § 8, 122 Stat. 3553, 3559 (2008). In the ADAAA, Congress rejected the unduly restrictive approach established by the Supreme Court in <u>Toyota Motor Mfg., Ky., Inc. v. Williams</u>, 534 U.S. 184, 198 (2002), for analyzing whether a plaintiff suffers from a disability for purposes of the ADA. <u>See</u> Pub. L. No. 110-325 at §2(b)(5), 122 Stat. at 3554. As a result, Congress mandated in the ADAAA that the definition of disability be construed "in favor of broad coverage of individuals . . . to the maximum extent

permitted" by the law. 42 U.S.C. § 12102(4)(A). The ADAAA is not retroactive, however, and thus does not apply to alleged discriminatory conduct which occurred prior to the effective date of the amendments. Nyrop v. Independent Sch. Dist. No. 11, 616 F.3d 728, 734 n.4 (8th Cir. 2010). Therefore, inasmuch as the alleged conduct giving rise to plaintiff's Control Center claim occurred in September 2008, prior to the effective date of the ADAAA, such claim is considered under pre-ADAAA standards.

Under pre-ADAAA standards, an ADA-qualifying disability is either "a physical or mental impairment that substantially limits one or more of the major life activities of an individual, a record of such impairment, or being regarded as having such an impairment." Norman, 606 F.3d at 459. A "major life activity" includes functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. Shipley v. City of Univ. City, 195 F.3d 1020, 1022 (8th Cir. 1999) (citing Bragdon v. Abbott, 524 U.S. 624, 638-39 (1998)). To be "substantially limited," the individual must have an impairment that prevents or severely restricts the individual from performing such activities. Toyota Motor Mfg., 534 U.S. at 198. "[I]mpairments that interfere in only a minor way with the performance of manual tasks" do not qualify as disabilities under the Act. Id. at 197.

The undisputed evidence before the Court shows that

plaintiff injured her knee which resulted in two knee surgeries, and that she returned to work after such surgeries in June 2007. Plaintiff claims that although her medical restrictions prevented her only from climbing stairs, she was subsequently transferred to the Control Center in September 2008 on account of this disability as well as an additional medical restriction that she not be in a position where she would have to restrain inmates. Plaintiff claims that no physician imposed such additional restriction but that she nevertheless was placed in the Control Center due in part to these physical limitations.

Under pre-ADAAA standards, walking up stairs is not a major life activity for purposes of the ADA. As such, the restriction that plaintiff not climb stairs does not qualify as an ADA disability. Weber v. Strippit, Inc., 186 F.3d 907, 914 (8th Cir. 1999). Nor does the restriction that plaintiff not restrain inmates qualify as an ADA disability. Although plaintiff claims that such restriction resulted in the defendant's failure to assign her to a position involving contact with inmates, the "[i]nability to perform [a] *particular* job does not constitute a substantial limitation on working." Taylor v. Nimock's Oil Co., 214 F.3d 957, 960 (8th Cir. 2000) (emphasis added).

Accordingly, because the undisputed evidence before the Court shows plaintiff not to have had an ADA-qualifying disability when she was assigned to the Control Center in September 2008,

defendant is entitled to summary judgment on plaintiff's claim that such assignment constituted disability discrimination.

2.  *Proposed Transfer to Another Facility*

The undisputed facts before the Court show that in April 2009, plaintiff's name was included on a list of employees considered for transfer from MSI to the City Justice Center (CJC). Plaintiff believed such proposed transfer was on account of her use of leave under the Family Medical Leave Act and on account of her disability. When plaintiff learned of the proposed transfer, she complained about the proposed action to Gene Stubblefield, Commissioner of Corrections. Plaintiff was never transferred to CJC. Instead, plaintiff retained her position in the Control Center at MSI and continues to hold such position to date.

Assuming without deciding that plaintiff's alleged disability as described above qualifies under the ADAAA as an ADA disability, plaintiff has nevertheless failed to establish a *prima facie* case of disability discrimination inasmuch as the undisputed evidence shows plaintiff not to have suffered an adverse employment action on account of her disability. "To constitute an adverse employment action, the complained of action must have an adverse impact on the employee and must effectuate a material change in the terms or conditions of . . . employment." Jones v. Fitzgerald, 285 F.3d 705, 713 (8th Cir. 2002) (internal quotation marks and citations omitted). That is, for an employment action to be

adverse, plaintiff must prove "a tangible change in duties or working conditions that constitute a material disadvantage." Id. (internal quotation marks and citation omitted).

Here, plaintiff was only *considered* for a transfer. No transfer was ever effectuated, and plaintiff experienced no change in her terms or conditions of employment. Indeed, plaintiff was never moved or reassigned from her position at MSI. The Eighth Circuit has held that an involuntary transfer which involves only minor changes in working conditions and does not involve a reduction in pay or benefits does not constitute an adverse employment action. See Jones, 285 F.3d at 713. There cannot be an adverse employment action, therefore, when an employee is only *considered* for an involuntary transfer, is not transferred, and experiences no change whatsoever in her employment status.

Accordingly, because the undisputed evidence before the Court shows that the April 2009 proposed transfer of plaintiff to another facility did not constitute an adverse employment action, defendant is entitled to summary judgment on plaintiff's claim that such proposed transfer constituted disability discrimination.

B.   Retaliation

Plaintiff claims that subsequent to her claim of discrimination brought against Captain Bond, she has been subjected to various forms of retaliation and retaliatory harassment within the Division of Corrections. A review of the Complaint, charge of

discrimination and the evidence submitted in relation to the instant motion shows plaintiff to assert the following instances of alleged retaliatory harassment:

On four separate occasions, plaintiff applied for promotion to Correctional Officer II (CO II). During the promotional process in September 2008, plaintiff participated in two interviews and was placed on a list for possible promotion. Plaintiff was not promoted. Persons ranking above plaintiff and below plaintiff on the list were promoted. Plaintiff was likewise denied promotion to CO II in September, November and December 2009.

Plaintiff was assigned to the Control Center on September 8, 2008, and was told such assignment was on account of physician's orders which limited her to work with no stairs and with no contact with inmates. On September 26, 2008, Dr. Boris Khariton, plaintiff's workmen's compensation physician, provided written instruction that plaintiff could be in contact with inmates at her job "but should not be involved in restraining them." Plaintiff's subsequent requests to be reassigned from the Control Center went unanswered. Plaintiff claims that her retention in the Control Center effectively isolated her from her co-workers.

In March or April 2009, plaintiff saw a stack of papers lying on a table in the eating area. Such stack included a memorandum which contained a list of employees considered for transfer to the CJC. Plaintiff's name was included on the list,

and plaintiff was told that the Detention Center Superintendent, James Chrans, specifically directed that plaintiff's name be included. The Division of Human Rights was contacted regarding the potential transfers to the CJC, and plaintiff was never transferred. Plaintiff subsequently received an Employee Action Report (EAR) for obtaining highly sensitive information.

In April 2009, plaintiff's request for an unscheduled vacation was denied. Plaintiff was advised that her request was denied by Mr. Chrans at that time because of staffing concerns.

In May 2009, plaintiff was stopped from carrying a colored bag into the Control Center despite her having carried the bag for two years. Plaintiff had observed other personnel carry colored bags in secured areas every day. Plaintiff complained regarding the disparate treatment and corrective action was taken with regard to another officer. Specifically, the other officer was told not to carry solid-colored bags or containers down the hallway. Plaintiff was not written up for this incident.

In June 2009, Mr. Chrans approached plaintiff during her break and, in front of other co-workers, told plaintiff to stop spreading rumors about other correctional officers. Plaintiff had previously spoken to a lieutenant about the arrest record of another officer. Plaintiff claims that Mr. Chrans spoke to her negatively and with an attitude.

In November 2009, while working in the Control Center,

plaintiff attempted to stop Lt. Phillip Sapp from entering the area with his gun in his hand, citing security concerns. Lt. Sapp began arguing with plaintiff and challenged her instruction inasmuch as she was not his supervisor. During this argument, Lt. Sapp became belligerent and began waving his weapon at plaintiff. Plaintiff reported the incident to her shift commander who wrote up Lt. Sapp. Lt. Sapp issued an EAR to plaintiff regarding her conduct in the incident. When plaintiff spoke to Mr. Chrans regarding the incident, Mr. Chrans determined not to take any action against Lt. Sapp.

Subsequent to the November 2009 weapons incident, Lt. Sapp attempted to have plaintiff written up for various actions, but his allegations were insufficient for EAR's to be issued against plaintiff.

In August 2010, plaintiff attempted to submit an incident report to Lt. Sapp, to which Lt. Sapp responded that either plaintiff or the person indicated in the report was lying. Plaintiff believed Lt. Sapp was taunting and trying to intimidate her inasmuch as he was in the presence of Captain Diggs during this encounter.

Plaintiff and Lt. Stewart, another employee within the Division of Corrections, married in September 2010. In January 2011, the Division of Corrections issued a memorandum memorializing the marriage between plaintiff and Lt. Stewart and indicated that

the Division would follow employment policies regarding Division employees married to each other.  To plaintiff's knowledge, no other married persons within the Division had memoranda issued regarding their married status.  Plaintiff's married status did not change her assignment to the Control Center or any other aspect of her duties as a CO I.  Plaintiff was humiliated by the public nature of this announcement and felt she was being singled out.

To establish a *prima facie* case of retaliation under Title VII or the ADA, plaintiff must show 1) that she engaged in protected conduct, 2) that reasonable employees would have found the challenged retaliatory action materially adverse, and 3) that the materially adverse action was causally linked to the protected conduct.  Weger v. City of Ladue, 500 F.3d 710, 726 (8th Cir. 2007) (citing Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)); Stewart v. Independent Sch. Dist. No. 196, 481 F.3d 1034, 1042-43 (8th Cir. 2007).  Defendant contends that the conduct of which plaintiff complains does not rise to the level to be considered materially adverse, nor can be shown to be causally linked to plaintiff's earlier charge of discrimination against Captain Bond.  For the following reasons, defendant's argument is well taken.

For alleged retaliatory conduct to be "materially adverse," that action must be shown to deter a reasonable employee from making or supporting a charge of discrimination.  White, 548

U.S. at 68; <u>Fercello v. County of Ramsey</u>, 612 F.3d 1069, 1077-78 (8th Cir. 2010). Petty slights, minor annoyances, and simple lack of good manners which often take place at work and all employees experience will not create such deterrence and thus do not constitute materially adverse actions. <u>White</u>, 548 U.S. at 68. Employees may have to withstand colleagues that do not like them, are rude and may be generally disagreeable people. "However, [a] court's obligation is not to mandate that certain individuals work on their interpersonal skills and cease engaging in inter-departmental personality conflicts." <u>Somoza v. University of Denver</u>, 513 F.3d 1206, 1218 (10th Cir. 2008) (<u>cited approvingly in Recio v. Creighton Univ.</u>, 521 F.3d 934, 941 (8th Cir. 2008)).

"The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." <u>White</u>, 548 U.S. at 67. Although plaintiff cites to unpleasant, rude and insensitive conduct, plaintiff has failed to demonstrate that any harm from these incidents was so significant such that a reasonable person would be deterred from engaging in protected activity. See <u>Devin v. Schwan's Home Serv., Inc.</u>, 491 F.3d 778, 786 (8th Cir. 2007), <u>abrogated on other grounds by Torgerson v. City of Rochester</u>, 643 F.3d 1031 (8th Cir. 2011)). Indeed, the undisputed evidence shows the contrary. In response to plaintiff's complaints regarding some of this alleged retaliatory conduct, such as the proposed transfer to CJC and disparate

treatment with carrying colored bags, plaintiff obtained favorable results. Without evidence of harm, the instances of unpleasant and disagreeable conduct as claimed by plaintiff cannot constitute materially adverse action under White. Devin, 491 F.3d at 786. This is especially true here where there is no evidence of a causal connection between plaintiff's charge of discrimination against Captain Bond which occurred in 2005/2006 and the retaliatory action alleged to have begun in 2008. Id. at 786-87.

Therefore, because the undisputed evidence before the Court shows that the conduct of which plaintiff complains was not materially adverse nor was causally connected to plaintiff's charge of discrimination against Captain Bond, defendant is entitled to summary judgment on plaintiff's claim that such conduct constituted unlawful retaliation.


Accordingly, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that defendant City of St. Louis' Motion to Strike Plaintiff's Sur-Reply (Doc. #40) is denied.

**IT IS FURTHER ORDERED** that defendant City of St. Louis' Motion for Summary Judgment (Doc. #30) is granted.

Judgment shall be entered accordingly.

_Frederick R. Buckles_
UNITED STATES MAGISTRATE JUDGE

Dated this  _19th_  day of September, 2011.